OPINION
Defendant, Richard K. Mantia, was arrested by Centerville Police Officer Scott Thomas on October 18, 2000, for speeding and driving while under the influence of alcohol. Mantia submitted to a breathalyzer test, which showed his blood/alcohol content to be 0.127%. Mantia was subsequently charged in Kettering Municipal Court with speeding in violation of Section 434.03 of the Centerville ordinances, and with operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1) and (A)(3). Mantia entered pleas of not guilty.
Mantia moved to suppress evidence of the results of the breathalyzer test, alleging that the test was not performed pursuant to methods approved by the director of health.
The trial court conducted a hearing on Mantia's motion. Officer Thomas testified that he is a qualified senior operator of the BAC DataMaster instrument and that he employed it to perform the test of Mantia's breath. Officer Thomas also testified that he observed Mantia for twenty minutes prior to administering the test, and that Mantia consumed nothing during that time. Officer Thomas further testified that the test was administered within two hours of Mantia's stop. Under direct examination by the prosecutor, Officer Thomas gave the following additional testimony:
Q. Now, this is a breath test?
A. Yes, sir.
 Q. Where they blow into a hose that's connected to the instrument? A. That's correct.
Q. And, what's on the end of the hose?
 A. It's a mouthpiece that you place on the hose prior to the test.
 Q. For hygiene reasons and to provide a sanitary receptacle for them to blow into. Is the end of that hose, the mouthpiece, is that replaceable?
A. Yes, sir it is.
Q. Is it a throw away item?
A. Yes, sir.
 Q. And, where, how is a clean one stored? What kind of a package is it in?
 A. They're in a sealed plastic package, clear plastic.
 Q. And, did you or did you not put on a clean mouthpiece when you had Mr. Mantia take the test?
A. I put on a clean on (sic), yes, sir.
 Q. As a senior operator, have you given tests to other people?
A. Yes, sir, I have.
 Q. Would you ever dream of giving a test to someone using an old mouthpiece?
A. No, sir I wouldn't.
MR. WENZKE: Objection, Your Honor. It's irrelevant
COURT: Overruled.
A. No sir, I would not.
Q. Did you give Mr. Mantia a clean mouthpiece?
A. Yes, sir I did.
Q. Any doubt in your mind?
A. No, sir none at all.
(T. pp. 304).
On cross-examination, Officer Thomas testified that the mouthpiece he used had been in a sealed wrapper and had been "on top of or underneath the cabinet" on which the breathalyzer sat. (T. 8).
Officer Douglas Gaudette of the Centerville Police Department also testified. He stated that he was present when Officer Thomas administered the test given to Mantia. Officer Gaudette testified that Officer Thomas obtained the mouthpiece that was used from a bag of sealed mouthpieces that was "on top, next to the machine, or in the cabinet" on which the machine sat. (T. 14).
Neither officer was able to state exactly where the bag of sealed mouthpieces was located. It appears that this was due, at least in part, to the fact that the test was not administered at the Centerville Police Department, with which the officers were most familiar. It was instead administered at the Sugarcreek Township Police Department because Centerville's breathalyzer was not working at the time.
Defendant Mantia also testified. He stated that he is familiar with the breathalyzer that was used, having used one himself in his work. He agreed that a clean mouthpiece must be used for sanitary reasons and to avoid contamination. He contradicted the testimony of the officers, however, stating that Officer Thomas was apparently unable to locate a mouthpiece in the room where the breathalyzer was located, and instead retrieved one from another room and carried it into the room where the breathalyzer was located. Mantia stated that the mouthpiece was not wrapped and that Officer Thomas carried it in his hand, subjecting it to possible contamination.
At the conclusion of the hearing the court made the following ruling from the bench:
 "Court has listened to the testimony provided here this morning. Court makes a finding that the Defendant was observed for a period of time of at least twenty minutes immediately prior to the test being administered to the Defendant. The Court further finds that there was at least substantial compliance in the admission, administration I should say, of the test. The Court overrules the Defendant's Motion to Suppress. There is a lack of any evidence here that this mouthpiece was contaminated in any form or fashion, that there was anything on this mouthpiece that would have influenced the outcome of the results of the test. Based on the foregoing, the Motion to Suppress is overruled."
(T. p. 34).
Mantia changed his plea on the R.C. 4511.19(A)(3) charge to a plea of no contest. The other charges were dismissed. The trial court convicted Mantia on his plea. The court sentenced Mantia to serve 180 days in jail, but suspended 177 days and credited him for an additional three days. Mantia was fined $1,000 plus costs. $750 of the fine was suspended.
Mantia filed a timely notice of appeal. He presents a single assignment of error, which states:
 THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS THE BREATHALYZER TEST.
Chemical tests of breath performed to determine a defendant's blood/alcohol level conducted in order to prove an R.C. 4511.19(A)(3) violation must be performed in accordance with methods approved by the director of health. R.C. 4511.19 (D)(1). When a defendant moves to suppress the results of such a test on a claim that the approved methods were not followed, it becomes the State's burden to prove that those methods were followed. State v. Shindler (1994), 70 Ohio St.3d 54.
The director of health has approved methods to be used for chemical tests of a defendant's breath to determine the defendant's blood/alcohol levels. See O.A.C. Chapter 3701-53. No mention is there made of the need to use a previously unused or a sanitized mouthpiece, or the need to keep the mouthpiece wrapped and sealed until used, or how mouthpieces must be stored until used. Nevertheless, all three witnesses testified that the usual and proper procedure is to use a fresh mouthpiece that is wrapped and sealed until it is used, and the trial court appears to have credited that testimony.
Mantia argues that the trial court necessarily credited his testimony over that of the officer's when it found that "[t]here is a lack of any evidence that this mouthpiece was contaminated in any form or fashion," because Mantia's version of the facts is the only version according to which contamination could have occurred at all. Mantia then further argues that the court, having accepted his testimony as true, erred by imposing on him the burden to prove that the mouthpiece had been contaminated.
Unless and until there is some evidence that a test method which the director of health has "approved" pursuant to R.C. 4511.19(D)(1) was not followed, there is no basis to suppress the results of a breath test on a finding that there was a failure to comply with those methods. There is no evidence or other basis to find that the director has approved any procedures which pertain to the mouthpiece on the machine used for the test. Therefore, the trial court did not err when it overruled Defendant's motion to suppress that was founded on a claim that the methods approved by the director were not followed.
The court might suppress breath test results, nevertheless, upon evidence that other procedures which the machine's manufacturer or a qualified operator say are necessary for proper results were not followed. Officer Thomas, who is a qualified senior operator, testified that use of a fresh mouthpiece is customary and proper. He also testified that he used a fresh mouthpiece to perform Mantia's test.
We do not agree that the trial court necessarily disbelieved Officer Thomas when it found that there was no evidence of contamination. Mantia's version of events, that the mouthpiece was unwrapped and in another location from which Officer Thomas carried it in his hand, is not required to reach the finding the court made. That finding is an inference reasonably drawn from Officer Thomas' version of events, which is that the mouthpiece was wrapped and sealed until it was used, preventing any possible contamination. Indeed, it is this version that the court necessarily credited when it overruled Defendant's motion to suppress.
The trial court's expression of a negative finding, that there was no evidence of contamination, does not necessarily demonstrate that it transferred the State's burden of proof to Mantia. The State satisfied its burden of proof with respect to the allegation in Mantia's motion to suppress through the testimony of Officer Thomas. It appears that the court was pointing out that, at least with respect to the particular possible flaw that Mantia had attempted to exploit, contamination of the mouthpiece, there was no evidence that it occurred. That does not amount to a transfer of the State's burden of proof.
The assignment of error is overruled. The judgment of the trial court will be affirmed.
 __________ GRADY, J.,
WOLFF, P.J. and BROGAN, J., concur.